

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/10/2015

| | | |
|---|---|---|
| IN RE: § | | |
| MICHELLE LYNN BEARDEN § | CASE NO: 13-34405 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| JOSEPH M HILL CH7 TRUSTEE § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 13-03294 | |
| § | | |
| MICHELLE LYNN BEARDEN, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

After she filed bankruptcy, Michelle Bearden spent the proceeds of an incentive fee paid to her. The incentive fee was estate property. Accordingly, Bearden must repay the $44,451.00 incentive fee to the Estate. Because Bearden willfully spent estate funds after being instructed not to do so, her discharge is denied.

### Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

### Procedural Background

Michelle Bearden filed her chapter 7 bankruptcy petition on July 19, 2013. On October 18, 2013, Chapter 7 Trustee Joseph Hill filed a complaint against Bearden seeking (i) a $44,451.00 judgment for spending funds that were property of the estate; and (ii) to deny her discharge pursuant to § 727(a)(2) and § 727(a)(4). (ECF No. 1). The Court held a trial on January 6, 2014. Based on testimony presented at trial, Hill requested the Court abate this adversary proceeding in order to commence a separate adversary proceeding against Bearden's

attorney, Lawrence Tackett. The Court granted this request. Hill filed a complaint against Tackett for malpractice on January 15, 2014. (Adv. Pro. 14-03009).

On April 2, 2015, the Court issued a recommendation to the District Court for judgment against Tackett in the amount of $44,451.00. On May 15, 2015, the District Court concurred with the recommendation and entered judgment against Tackett. (Case No. 14-03009, ECF No. 24). On June 15, 2015, Hill filed a motion for entry of judgment against Bearden. The Court terminated the abatement of this adversary proceeding on June 23, 2015. (ECF No. 14).

**Factual Background**

Prior to filing bankruptcy, Michelle Bearden worked at Lighthouse R&D Enterprises as an accounting manager. (ECF No. 1 at 2). Lighthouse's management determined that the business would be shut down. On December 20, 2012, Lighthouse sent a letter announcing its intention to pay employees an "incentive fee" in an amount equal to their annual salary, on the condition that they to continue to work for the company until termination. (ECF No. 11 at 8). The announcement letter estimated that the wind-down work would be completed by the end of June of 2013. (*Id.*).

Bearden completed the work that entitled her to the incentive fee around July 1, 2013. (ECF No. 1 at 2). Bearden, acting upon advice from Tackett, filed bankruptcy on July 19, 2013. Because Tackett told Bearden that the incentive fee would not be estate property if received after the commencement of the bankruptcy case, she did not include the incentive fee in her schedules. Tackett was aware of the incentive fee, but prepared and filed the schedules that omitted the incentive fee. Bearden received the incentive fee in the amount of $44,451.00 on July 22, 2013. Thereafter, she executed an earnest money contract to purchase real property located at 40 N. Hall Dr. in Montgomery, Texas ("Montgomery Property"), placing $2,000.00 of the funds

derived from the incentive fee as a down payment. (ECF No. 8 at 4). Bearden spent an additional $20,250.47 making improvements on the property. (*Id.*).

Hill first learned of the incentive fee at the creditor's meeting held on August 20, 2013. Bank records available at the meeting showed that $17,870.32[1] remained in Bearden's account as of August 14, 2013[2]. Hill directed Ms. Bearden to turn over the funds immediately as property of the estate. Tackett instructed her to comply with Hill's demand. Despite Hill's request (and Tackett's advice), Bearden transferred $12,000.00 to an account held by her son, Jacob, which Jacob ultimately used to make improvements on the property. Bearden spent the remainder of the funds in her account ($2,894.85) for additional improvements to the property. These expenditures occurred immediately following the creditor's meeting on August 20, 2013. Following these expenditures, the entirety of the incentive fee has been spent. (ECF No. 8 at 6).

## Analysis

### I. The Incentive Fee Was Estate Property

Property of the estate "consists of all of the interests in property, legal and equitable, possessed by the debtor at the time of filing . . . ." *Owen v. Owen*, 500 U.S. 305, 308 (1991). Expressly excluded from property of the estate are earnings that result from services rendered post-petition. 11 U.S.C. § 541(a)(6). However, Ms. Bearden testified that the she completed the services necessary to receive the incentive fee *before* she filed bankruptcy:

> Q:   The incentive fee will be paid on the condition that you remain employed by Lighthouse until the work you are responsible for and have been involved in is complete?
>
> Bearden:   Correct.

---

[1] This was the balance shown on the bank statement. The actual balance was approximately $3,000.00 less.

[2] Bearden had already spent much of the incentive fee purchasing a vehicle, repaying loans from relatives, repairing her brother's motorcycle, and making a $2,000 deposit on cruise ship tickets.

> Q:  It estimates that it will be wound down by the end of June, 2013?
>
> Bearden:  Correct.
>
> Q:  Did you continue to work for Lighthouse after you got this letter?
>
> Bearden:  Yes.
>
> Q:  You filed your bankruptcy petition on July 19th, 2013, correct?
>
> Bearden:  Yes.
>
> Q:  So, on the day that you filed your bankruptcy petition you knew you were going to be entitled to this incentive, didn't you?
>
> Bearden:  Yes.
>
> Q:  In an amount that's equal to your yearly salary?
>
> Bearden:  Yes.
>
> Q:  When did you know that the incentive pay was actually going to be paid?
>
> Bearden:  I believe it was July 17th.
>
> Q:  That is just two days prior to the bankruptcy filing?
>
> Bearden:  I believe that is correct, yes.

(Trial, Jan. 6, 2014 at 09:12:30).

It is settled that bonus payments attributable to services performed prior to the bankruptcy are property of the estate under § 541(a)(6). *See, e.g., Daly v. Soboslai (In re Soboslai)*, 263 B.R. 700, 703 (Bankr. D. Conn. 2001). Because the incentive fee was compensation for work performed by Ms. Bearden prior to filing bankruptcy, it is properly characterized as estate property under § 541(a).

The Court has previously determined that Bearden was misled by Tackett with respect to the nature of the incentive fee. (Case No. 14-03009, ECF No. 19). Nevertheless, Bearden's

ignorance of the law does not change the characterization of the funds as estate property. As set forth below, Bearden's misunderstanding of the law may be considered when evaluating her entitlement to a discharge, but it does not grant her rights in estate property.

The obligation imposed on a debtor to deliver property of the estate to trustee is "self-operative and mandatory." *In re Reeves*, 509 B.R. 35, 65 (Bankr. S.D. Tex. 2014). There is no requirement in the Code that requires the trustee to demand delivery from the debtor. *Id.* The incentive fee received by Bearden was property of the estate, effective with Bearden's filing on July 19, 2013.

Accordingly, the Court awards judgment in favor of Trustee for $44,451.00.

## II. The Montgomery Property is Property of the Estate

Bearden purchased and improved the Montgomery Property with funds derived entirely from the incentive fee. (ECF No. 8 at 4). In total, Bearden expended $22,250.47 on the Montgomery Property, including the down payment and improvements.

Under § 541(a)(6), the bankruptcy estate includes "[p]roceeds, product, offspring, rents or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). Congress intended the term "proceeds" to sweep broadly, not limited by the definition of "proceeds" set out in the Uniform Commercial Code, but instead "encompassing any conversion in the form of property of the estate, and anything of value generated by property of the estate." *In re McClain*, 516 F.3d 301, 312 (5th Cir. 2008); *See also* 5 Collier on Bankruptcy ¶ 541.15 (16th ed. rev. 2015)(" . . . [T]he caveat of both the House and Senate Committee reports is that the term "proceeds" as used in § 541(a)(6) is not intended in a confining sense as it is defined under the U.C.C."). Furthermore, the bankruptcy estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). This provision was included by Congress to emphasize its intent that § 541 be an "all-embracing definition and to ensure that property

interests created with or by property of the estate are themselves property of the estate." *McClain*, 516 F.3d at 312. "Thus, by virtue of these two provisions, if undisclosed pre-petition funds, *i.e.*, property of the bankruptcy estate, were used to generate some type of property interest, that subsequent property interest is part of the bankruptcy estate . . . ." *Id.* at 312.

Generally, property acquired by a debtor postpetition does not become property of the bankruptcy estate. 11 U.S.C. § 541. However, Bearden's use of undisclosed pre-petition funds to purchase and improve the Montgomery Property, albeit in reliance on the advice of counsel, renders the Montgomery Property "proceeds" of estate property, and consequently, the Montgomery Property itself becomes estate property.

Unless a debtor takes affirmative steps to exempt assets, the property will remain in the bankruptcy estate. *In re Reed*, 184 B.R. 733, 737 (W.D. Tex. 1995). Typically, the proper date for deciding whether an exemption exists is the date the bankruptcy petition is filed. *Id.*; 11 U.S.C. § 522. The Fifth Circuit has consistently interpreted Bankruptcy Rule 1009(a) liberally to allow debtors in voluntary cases to amend their petitions and claim property exempt. *Matter of Sandoval*, 103 F.3d 20, 22 (5th Cir. 1997).

Bearden has not amended her petition to claim the Montgomery Property as exempt. (Case No. 13-34405, ECF No. 18). Accordingly, the Montgomery Property remains estate property. Hill is empowered by § 363 of the Bankruptcy Code to sell or lease property of the estate after notice and a hearing. 11 U.S.C. § 363.

Because the property belongs to the Estate, Hill's request for the imposition of a constructive trust or lien on the Montgomery Property is not ripe for consideration.[3]

---

[3] The Court does not rule out the possibility that Hill could elect to sell the property to Bearden and retain a lien.

### III. Objection to Discharge

Section 727(a)(2) of the Bankruptcy Code provides that the court must deny a Debtor's discharge if the Debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition; or . . . property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

Whether denial of Bearden's discharge is appropriate depends on (1) whether the incentive fee is appropriately characterized as property of the estate, and (2) whether Ms. Bearden acted with intent to hinder, delay or defraud the trustee.

The Court has already determined that the incentive fee is estate property. Accordingly, only the second element, whether Bearden acted with sufficient intent to support a denial of discharge, remains to be addressed.

The Court accepts Bearden's testimony that she believed—up until the time of the § 341 meeting—that the incentive fee was not estate property. This belief was formed in light of the plainly erroneous advice Bearden received from Tackett  There is no evidence Bearden acted with any intent to hinder, delay, or defraud the trustee up until the creditor's meeting. She did not attempt to hide funds or conceal any transactions. She expressed genuine surprise at the creditor's meeting when Hill scrutinized her receipt and use of the funds.

Nevertheless, at the creditor's meeting Hill demanded the remaining funds be turned over to the estate. Bearden disregarded this express demand. The Court recognizes the difficult position Bearden was placed in by Hill's demand. Bearden had already undertaken obligations to which she felt the money was committed. Nevertheless, at that point she knew that the money was not hers. In an email to her attorney on August, 20th, immediately following the creditor's

meeting, Bearden stated, "I am not taking a chance turning over that money." (ECF No. 11 at 29). In response, Tackett asked her to comply with Hill's requests, and assured her that he would attempt to exempt as much of the incentive fee as possible. (*Id.* at 30). Bearden failed to comply.

Under § 727(a), whether a debtor has the requisite wrongful intent to permit denial of discharge on basis of transfer, removal, or concealment of property is a question of fact. *In re Hodgson*, 167 B.R. 945 (D. Kan. 1994). A presumption of fraudulent intent arises when property is transferred to a relative. *Matter of Chastant*, 873 F.2d 89, 91 (5th Cir. 1989). Additionally, retention of the use or benefit of the property transferred strongly indicates a fraudulent motive underlying the transfer. *Id.*

Immediately following Hill's demand that Bearden turn over the remainder of the incentive fee, Bearden transferred $12,000.00 to her son. The funds were then used to improve the Montgomery Property, directly benefitting Bearden who resided there. These facts, combined with Bearden's correspondence with Tackett expressing her intent to retain the funds, support a finding that Bearden acted with actual fraudulent intent when she disposed of the remaining funds. Accordingly, the Court holds that Bearden must be denied the privilege of the discharge.

### Conclusion

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **September 10, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE